IN RE the MARRIAGE OF: Rita M. MICHALIK, Petitioner-Appellant-Petitioner,

v.

Kenneth E. MICHALIK, Respondent-Respondent.

Supreme Court

*No. 90-2497. Oral argument October 5, 1992.—Decided January 20, 1993.*

(Also reported in 494 N.W.2d 391.)

For the petitioner-appellant-petitioner there were briefs by *Patricia L. Grove* and *Halling & Cayo, S.C.*, and *Allan R. Strauss*, of counsel, all of Milwaukee and oral argument by *Mr. Strauss*.

For the respondent-respondent there was a brief by *C. Michael Hausman* and *Slattery & Hausman*, Milwaukee and oral argument by *C. Michael Hausman*.

WILLIAM A. BABLITCH, J.   This case involves the authority of Wisconsin courts to modify a child custody determination entered by a court of another state.

We look to the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (PKPA) and the Uniform Child Custody Jurisdiction Act, ch. 822 Stats. (UCCJA) to resolve this issue.

Rita Michalik seeks review of a decision of the court of appeals affirming the circuit court's order declining to interfere with a prior custody order entered by an Indiana court. *See In re Marriage of Michalik v. Michalik*, 164 Wis. 2d 544, 476 N.W.2d 586 (Ct. App. 1991). The court of appeals concluded that the PKPA preempts conflicting provisions of the UCCJA and precludes courts in Wisconsin from modifying the child custody determinations of the Indiana court and from interfering with that court's ongoing exercise of its child custody determination jurisdiction. We agree. Accordingly, the judgment of the court of appeals is affirmed.

The relevant facts are undisputed. Rita Michalik and Kenneth Michalik were granted a divorce by the Superior Court of Porter County, Indiana, by a Dissolution Decree entered by that court on October 1, 1987, *nunc pro tunc* to March 3, 1987. The decree granted Rita Michalik custody of the Michalik's three minor children, subject to Kenneth Michalik's visitation rights. The nature of these visitation rights was set forth in the decree.

On March 9, 1989, the Indiana court entered an order finding Rita Michalik "in contempt of the Visitation Order of this Court . . .." However, the Indiana court took punishment under advisement, noting that Rita Michalik's "compliance with Visitation Orders in the future would likely purge her of the contempt." The March 9, 1989 order also modified the visitation schedule.

On May 1, 1989, Rita Michalik and the children moved to Milwaukee, Wisconsin. As a result of the move,

the Michaliks agreed to a modification of the visitation schedule, and on June 7, 1989, the Michalik's written stipulation encompassing their agreement was approved by the Indiana court. Included in the stipulation was the following agreement: "The parties further stipulate that the Porter Superior Court, sitting in Valparaiso, Indiana shall retain in personam jurisdiction over the parties with reference to said dissolution action and all subsequent post-decree modifications therein."

On December 1, 1989, seven months after her relocation, Rita Michalik initiated an action against Kenneth Michalik in Milwaukee County Circuit Court seeking, among other things, a divorce, custody of the Michalik's children, and a division of the parties' property. Rita Michalik's petition stated that an "action for divorce by the parties hereto has been concluded in Porter County in the State of Indiana on the 3rd day of March, 1987 . . .." Attached to the petition was a copy of the October 1, 1987, Dissolution Decree entered by the Indiana court and a copy of the June 7, 1989, order approving the parties' stipulated modification of Kenneth Michalik's visitation petition. Rita Michalik's Milwaukee County petition further stated: "[t]he parties have not entered into any written agreement as to support, custody, visitation of the children, . . . save for orders of the court or judgment of divorce."

On December 4, 1989, Kenneth Michalik, who continued to reside in Indiana, filed a motion in the Indiana court claiming that Rita Michalik was interfering with his visitation rights. Kenneth Michalik also sought temporary custody of the children. On December 28, 1989, the Indiana court found Rita Michalik in contempt of court and granted temporary custody of the children to Kenneth Michalik, however, that order was vacated on March 1, 1990, and all orders entered by the Indiana

court prior to December 28, 1989, were ordered to "remain in full force and effect."

On January 22, 1990, the Milwaukee County Circuit Court stayed proceedings in Rita Michalik's Wisconsin action "until such time as this Court is notified that Indiana chooses not to exercise its jurisdiction and elects to allow Wisconsin to hear the matter, or an appellate court directs Wisconsin to hear the matter." Rita Michalik neither sought circuit court reconsideration of this decision to stay nor leave to appeal from this order of the court. Thereafter, however, Rita Michalik, by an order to show cause signed by the circuit court and filed June 8, 1990, requested that the Circuit Court for Milwaukee County modify "the summer (school recess) visitation schedule of the parties . . .." Kenneth Michalik objected, contending that the Wisconsin court should not hear the matter.

On October 16, 1990, the Wisconsin court entered an order finding that the children had "the closest and most significant connections with the State of Wisconsin . . ." and that Wisconsin was the children's "home state" under ch. 822 Stats., the Uniform Child Custody Jurisdiction Act. Although concluding that it had "concurrent subject matter jurisdiction" with Indiana, the circuit court decided to defer to the Indiana court "regarding determinations or modification of visitation issues arising under the Dissolution Decree, and Modified Stipulation, as such relate to proceedings appropriate for consideration under Wis. Stats. Chapter 822 . . .." In addition, the circuit court's decision appeared to make a distinction between "custody" determinations and "visitation" determinations. In its oral bench decision the court stated: "In this case we do not have a child custody issue. If anything, we have pending, at least in the request, substantive release by the petitioner [which]

645

is a question of modification as it relates to visitation." Although neither party appears to argue that this is an accurate distinction, for purposes of clarification we note that visitation under both Wisconsin's UCCJA and the PKPA is included in the definition of a "custody determination." Section 1738A(b)(3) provides: " 'custody determination' means a judgment, decree, or other order of a court providing for the custody or *visitation* of a child, and includes permanent and temporary orders, and initial orders and modifications . . .." 28 U.S.C. § 1738A(b)(3) (emphasis added). Section 822.02(2) of the UCCJA defines a "custody determination" as any "court decision and court orders and instructions providing for legal custody, physical placement or *visitation* rights." Section 822.02(2) (emphasis added).

Rita Michalik appealed the circuit court judgment and the court of appeals affirmed. The court of appeals concluded that the PKPA precludes Wisconsin courts from modifying a child custody determination originally made in an Indiana court and from interfering with that court's ongoing exercise of its child custody determination jurisdiction. Rita Michalik petitioned for review arguing that because Wisconsin has "home state" jurisdiction over the children, Indiana cannot act in custody matters and any orders it may issue will be unenforceable because they will not be in compliance with the PKPA. We granted Rita Michalik's petition for review and affirm.

Before beginning our analysis of this case, a brief discussion of the historical underpinnings of the PKPA and a summary of its provisions is warranted.

The United States Supreme Court first discussed the problem of interstate child custody disputes in *May v. Anderson*, 345 U.S. 528 (1953). The issue presented in *May* was whether an Ohio court must give full faith and

credit to a Wisconsin decree awarding custody of the children to their father when that decree was obtained by the father in an *ex parte* divorce action in a Wisconsin court which had no personal jurisdiction over the mother. *Id.* at 528–29. A majority of the court held that a state was not bound under the Full Faith and Credit Clause of the United States Constitution to recognize a custody order of another state when the state issuing the order did not have personal jurisdiction over one of the parents. *Id.* at 534.

Following *May*, child abductions undertaken for forum shopping purposes became a frequent occurrence. Andrea S. Charlow, *Jurisdictional Gerrymandering and the Parental Kidnapping Prevention Act*, Family Law Quarterly, Vol. XXV, Number 3 299, 303 (1991). "Even when 'parental kidnapping' was not involved, one or both divorced spouses often moved and sought a different custody order from their new state of residence. The result, seen with depressing frequency, was conflicting custody orders from two states, neither willing to concede the exclusive custody jurisdiction of the other." *Meade v. Meade*, 812 F.2d 1473, 1475 (4th Cir. 1987).

In an attempt to alleviate these problems, the Commission on Uniform Laws devised the Uniform Child Custody Jurisdiction Act. *See Uniform Child Custody Jurisdiction Act*, 9 U.L.A. 123 (1988). Now adopted, in some form, by all 50 states, the UCCJA was promulgated to provide the states with uniform standards for determining custody jurisdiction.[1] However, because states enacted different versions of the UCCJA and state

---

[1] Wisconsin's Uniform Child Custody Jurisdiction Act is found at Chapter 822, Stats., of the Wisconsin Statutes. Section 822.01(1) sets forth the purposes of the Wisconsin Act:

**Purposes; construction of provisions. (1)** The general purposes of this chapter are to:

courts have varied in their interpretations of the Act, the UCCJA has proved to be an inadequate solution to the problem of parental kidnapping and interstate custody disputes. *See*, Charlow, *supra*, at 308; Joan M. Krauskopf, *Remedies for Parental Kidnapping in Federal Court: A Comment Applying the Parental Kidnapping Prevention Act in Support of Judge Edwards*, 45 Ohio St. L.J. 429, 434–35 (1984); *See also* Christopher L. Blakesley, *Child Custody—Jurisdiction and Procedure*, 35 Emory L.J. 291, 303–04 (1986).

To remedy the weaknesses of the UCCJA, the United States Congress enacted the PKPA: a uniform federal statute governing child custody jurisdiction dis-

---

(a)   Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b)   Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c)   Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and family have a closer connection with another state;

(d)   Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e)   Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f)   Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g)   Facilitate the enforcement of custody decrees of other states;

(h)   Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i)   Make uniform the law of those states which enact it.

putes. The PKPA was enacted in 1980 pursuant to Congress' power under Article IV, section 1, of the United States Constitution, which provides that: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may be general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." To the extent that the PKPA and the UCCJA conflict, the Supremacy Clause of the United States Constitution mandates that the PKPA preempts the UCCJA.[2] *See In Interest of A.E.H.*, 161 Wis. 2d 277, 468 N.W.2d 190 (1991); Amy Shapiro, *Uniform Child Custody Jurisdiction Act (UCCJA) and the Parental Kidnapping Prevention Act (PKPA): A Comparative Study*, Wis. J. of Fam. Law Vol. 11, No. 1, 1 (1991). Thus, as the court of appeals in this case correctly noted:

The Parental Kidnapping Prevention Act of 1980 is . . . conclusive on the issues to which it is applicable:

Once a State exercises jurisdiction consistently with the provisions of the [Parental Kidnapping Prevention] Act, no other State may exercise concurrent jurisdiction over

---

[2] Article VI, clause 2, of the United States Constitution provides that the,

constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the constitution or laws of any state to the contrary notwithstanding.

Because the PKPA preempts the UCCJA, the provisions of the UCCJA which govern modification are not applicable in this case.

the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree. *Michalik,* 164 Wis. 2d at 550 (citing *Thompson v. Thompson,* 484 U.S. 174, 177. (footnote omitted).

The governing principle of the PKPA requires that "authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State." 28 U.S.C. § 1738A(a).[3]

---

[3] The PKPA provides the following definitions of its terms:

(b) As used in this section [the PKPA], the term—

(1)     'child' means a person under the age of eighteen;

(2)     'contestant' means a person, including a parent, who claims a right to custody or visitation of a child;

(3)     'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;

(4)     'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period.;

(5)     'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

(6)     'person acting as a parent' means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

Section 1738A(d) "then provides the crucial presumption of continuing jurisdiction . . .," *See Meade*, 812 F.2d at 1476, and "expresses its clear intent to reserve the modification of child custody determinations to the state of initial rendition . . .." *Michalik*, 164 Wis. 2d at 552:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section *continues* as long as the requirement of subsection (c)(1) [that the state has jurisdiction as a matter of its own law] of this section continues to be met and such State remains the residence of the child or of any contestant. 28 U.S.C. § 1738A(d) (emphasis added).

Section 1738(f), the exception to the prohibition on modification contained in subsection (a), "restates the same presumption [of continuing jurisdiction], but in terms of an interdiction of assertions of jurisdiction by a second state when the first state's jurisdiction continues." *Meade* 812 F.2d at 1476:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
>
> (1) it has jurisdiction to make such a child custody determination; and
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination. 28 U.S.C. 1738A(f).

(7) 'physical custody' means actual possession and control of a child; and

(8) 'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

651

Furthermore, the PKPA prohibits a state court from exercising jurisdiction in any child custody dispute over which another state is currently exercising jurisdiction in accordance with § 1738(A):

> A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination. 28 U.S.C. § 1738(A)(g).

The court of appeals in this case succinctly and correctly summarized these provisions as follows:

> The Parental Kidnapping Prevention Act thus preserves to the state that initially enters a child custody determination that is valid under its own law and is consistent with the Act, the sole prerogative to modify that determination, as long as any modification would also be valid under its own law and either the child or a contestant continues to live in the state. *Michalik*, 164 Wis. 2d at 553.

Other courts and commentators have summarized the PKPA in similar terms. For example, the Fourth Circuit Court of Appeals in *Meade v. Meade,* explained the PKPA as follows:

> The effect of §§ 1738A(d) and 1738A(f) is to limit custody jurisdiction to the first state to properly enter a custody order, so long as two sets of requirements are met. First, the PKPA defines a *federal* standard for continuing exclusive custody jurisdiction: the first state must have had proper initial custody jurisdiction when it entered its first order (according to criteria in the Act) and it must remain 'the residence of the child or any contestant' when it

later modifies the order. Second, the Act incorporates a *state law* inquiry: in order to retain exclusive responsibility for modifying its prior order the first state must still have custody jurisdiction as a matter of its own custody law. Even if the federal and state criteria for continuing jurisdiction are met, the first state's courts can, if they choose, voluntarily relinquish their jurisdiction in favor of a court better situated to assess the child's needs. *Meade*, 812 F.2d at 1477. *See also*, Charlow, *supra* at 309 ("The PKPA provides that a state that has rendered an order in accordance with the act maintains jurisdiction if it had jurisdiction under the PKPA at the time of the original order, if it has jurisdiction under local law at the time the petition for modification is filed, and if one party remains in the original issuing state at the time of the request for modification").

We agree with the *Meade* court's analysis of the PKPA and we apply it to the dispute in this case.

Rita Michalik does not contest that as a matter of Indiana law, Indiana has custody jurisdiction to modify its October 1, 1987 order. Thus, the second requirement of the PKPA, the state law inquiry, is satisfied in this case. Furthermore, it is undisputed that Kenneth Michalik is a "contestant" as defined under the act, and he "continues to live in" Indiana. Thus, the only remaining question is whether Indiana "had proper initial custody jurisdiction when it entered its first order (according to criteria in the Act)." A state's "child custody determination" is made consistent with the PKPA if the state court making the "child custody determination:"

(1) . . . has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A)   such State (i) is the home State of the child on the date of the commencement of the proceedings, or (ii) . . .

. . .

(E)   the court has continuing jurisdiction pursuant to subsection (d) of this section. 28 U.S.C. § 1738A(c) (emphasis added).

Indiana's authority under its own law to issue the October 1, 1987 decree, as required under subsection (c)(1), is not contested. Therefore, the October 1, 1987, Indiana decree was made consistent with the PKPA if Indiana was the "home state of the child on the date of the commencement of the proceeding."

We agree with the court of appeals in this case that a child's "home State" for the purposes of determining whether an initial child custody determination was consistent with the Parental Kidnapping Act must be the state in which the child has lived with a parent for at least six months prior to the commencement of the proceeding that resulted in that determination. Thus, since the Michalik children lived in Indiana for at least six months prior to the commencement of their parents' 1987 divorce proceeding, Indiana was the "home state," and the October 1, 1987 decree was consistent with the provisions of the PKPA. Additionally, since Kenneth Michalik continues to live in Indiana, and there is no claim that Indiana does not have ongoing jurisdiction over the decree under its own law, Indiana has continuing child custody determination jurisdiction under the PKPA, and its decree cannot be modified by the state of Wisconsin. *See* §§ 1738A(f) and (d).

The court of appeals reached this conclusion by comparing two alternative meanings of the term "proceeding" in the statute. The court posited that the term

could mean the October 1, 1987 proceeding, in which case Indiana is the "home state" or "Wisconsin . . . is the children's 'home State' . . . if the word 'proceeding' refers to the Wisconsin litigation." *Michalik*, 164 Wis. 2d at 555. However, we think this analysis was unnecessary because Rita Michalik does not argue that for purposes of determining whether the *initial* decree was consistent with the act, the term "proceeding" refers to the Wisconsin litigation.[4] Rather, she contends that, while it may be correct that Indiana was the child's "home state" at the time of the October 1, 1987 proceeding, the relevant inquiry is not whether the initial proceeding was consistent with the act, but rather which state is the "home state" of the children at the time of the modification proceeding on June 8, 1990. Specifically, she argues:

> The axis upon which the instant inquiry rests is whether Indiana had jurisdiction, *consistent with* the provisions of 28 U.S.C. § 1738A, at the time Rita commenced her June 8, 1990 motion. The Petitioner's position is that Indiana could not exercise its jurisdiction to modify custody because to do so would violate federal law, the PKPA. The *only* state that maintained jurisdiction, the exercise of which *would* be consistent with the PKPA, was Wisconsin. Consequently, when Rita brought her June 8, 1990 motion in Wisconsin, *only* Wisconsin could act to modify

[4] Rita Michalik does not appear to dispute that when ascertaining whether the initial decree was consistent with the act the term "proceeding" refers to the initial proceeding. As suggested above, she appears to contend that the relevant question in this case is not which state was the home state at the time of the initial proceeding, but rather which state is the home state at the time of the modification proceedings. However, if Rita is arguing that in determining which state was the home state at the time of the initial decree, the term "proceeding" refers to the Wisconsin litigation, we reject that argument.

custody . . .. Any custody orders issued by Indiana would not be entitled to full faith and credit . . ..

Rita Michalik is suggesting that Indiana cannot act to modify its initial custody decision because a *modification* order in this case, if issued by Indiana instead of Wisconsin, would not comply with the provisions of PKPA, i.e., subsection (c) of the act, and would therefore not later be entitled to full faith and credit. She contends that the order would not comply with the PKPA because at the commencement of the modification (June 8, 1990), Wisconsin was the home state. Rita Michalik is correct that if Indiana were to have issued a modification order in June 1990, it would not have been the children's home state on that date. However, that does not mean that an Indiana modification order in this case would not be consistent with the provisions of the PKPA under subsection (c) and thus be entitled to full faith and credit. Section 1738A(c)(2)(E) deals precisely with this situation.

Section 1738(c) provides that a "child custody determination" is consistent with the act if

(1) such court has jurisdiction under the law of such State; and

(2) *one* of the following conditions is met:
(A) such State (i) is the home state of the child on the date of the commencement of the proceeding, or . . .

. . ..
(E) the court has continuing jurisdiction pursuant to subsection (d) of the section (Emphasis added).

Thus, because Indiana in June of 1990 would have: (1) had jurisdiction under its own law as required under

§ 1738A(c)(1); and (2) had continuing jurisdiction pursuant to subsection (d) as required under (c)(2)(E), any order issued by Indiana at that time would have been consistent with the PKPA and would be entitled to full faith and credit. Section 1738A(c)(2)(E) provides for states that have lost "home state" status, but have continuing jurisdiction under subsection (d), to issue modification orders that are consistent with the PKPA under subsection (c).

The Alaska Supreme Court reached this same conclusion when it was faced with determining whether a "modification" order of a Kansas court was entitled to full faith and credit by the Alaska courts. Citing subsection (c)(2)(E) of the PKPA the court stated:

> The threshold question is whether the 1982 Kansas [modification] decree was made consistently with the PKPA. Since Murphy is still a Kansas resident, the Kansas decree conforms with the PKPA if Kansas had jurisdiction under its version of the UCCJA. *Id.* § 1738A(c)(1), (c)(2)(E), (d)
>
> When the initial decree was entered, Kansas had jurisdiction because it was the home state of the children. Kan. Stat. Ann. § 38–1303(a)(1) (1986). Kansas had continuing modification jurisdiction in 1982 because Murphy resided there and was the primary custodial parent. Therefore, the 1982 Kansas order is consistent with the PKPA. 28 U.S.C. § 1738A(c)(1), (c)(2)(E), (d). *Murphy v. Woerner*, 748 P.2d 749, 750–51 (Alaska 1988) (Footnotes omitted).

Rita Michalik also seems to suggest that the "best interests" of the child mandate that Wisconsin should have jurisdiction in this case. Specifically, she asserts that Wisconsin, as the current "home state," has significant contacts with the children and has access to more

reliable and current information regarding the children. However, as explained above, the PKPA shows a preference for continuing jurisdiction in the original "home state." "Jurisdiction [under the PKPA] does not "shift" unless both parties leave the state that first correctly exercised jurisdiction—so long as the state's general domestic relations law provides for continuing jurisdiction." Lucy Cooper, *The Parental Kidnapping Prevention Act (PKPA) of 1980—The Most Often Ignored Law in Family Court,* Wis. J. of Fam. Law 10, 12 (1991). Thus, Indiana still has jurisdiction to modify custody even though "home state" has shifted to Wisconsin. *See* Cooper, *supra* at 12 (explaining that jurisdiction does not shift from original "home state" just because a new "home state" is established). These jurisdictional provisions of the PKPA are binding on this court and cannot be circumvented in favor of an individual best interests test. *See,* Shapiro, *Supra* at 20 ("neither the UCCJA nor the PKPA gives the courts authority to circumvent the jurisdictional requirements in favor of an individual best interests test"). Furthermore, the preference in the PKPA to leave jurisdiction in the state which rendered the original decree was intended to promote the best interests of the child in that it discourages interstate abduction and other unilateral removals of children for the purpose of obtaining a favorable custody decree. *See* Pub. L. 96–611, § 7(c)(6), 94 Stat. at 3569. [5]

[5] Congress enacted the provisions of the PKPA to advance the following goals:

(1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;

(2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;

Lastly, Rita Michalik contends that if this court upholds the court of appeals determination that Wisconsin does not have jurisdiction in this case to modify the Indiana decree our holding will be in conflict with our prior decision in *In Interest of A.E.H.*, 161 Wis. 2d 277 (1989). However, our decision in *A.E.H.* was based upon the fact that California, by dismissing its previous action, had declined to exercise its jurisdiction. Indiana has not made any equivalent gesture indicating its relinquishment of jurisdiction over this dispute. Therefore, *A.E.H.* is not controlling in this matter.

We conclude that under the circumstances presented in this case, the PKPA precludes courts in Wisconsin from modifying the child custody determinations of the Indiana court and from interfering with that court's ongoing exercise of its child custody determination jurisdiction. Accordingly, the judgment of the court of appeals is affirmed.

*By the Court.*—The decision of the court of appeals is affirmed.

---

(3)   facilitate the enforcement of custody and visitation decrees of sister States;

(4)   discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5)   avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; and

(6)   deter interstate abductions and other unilateral removals of children undertaken to obtain custody and visitation awards. Pub. L. 96–611, § 7(c). 94 Stat. at 3569.