# Illinois Official Reports

## Appellate Court

---

### *Leroy K.D. v. Nicole B.*, 2021 IL App (3d) 200010

---

| | |
|---|---|
| Appellate Court Caption | LEROY K.D., Petitioner-Appellant, v. NICOLE B., Respondent-Appellee. |
| District & No. | Third District<br>No. 3-20-0010 |
| Filed | September 14, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Fulton County, No. 19-FF-45; the Hon. William A. Rasmussen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Leroy K.D., of Canton, appellant *pro se*.<br><br>Meagan K. Box, of Gullberg, Box, Worby & Rogers, LLC, of Monmouth, and Josette C. Allen, of Smart Law LLC, of Lisle, for appellee. |
| Panel | JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.<br>Justices Holdridge and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1          Petitioner, Leroy K.D., filed a self-represented petition[1] in the trial court to establish his parentage and visitation rights as to the minor child, R.D. Respondent, Nicole B., R.D.'s maternal aunt and guardian who lived in Minnesota, filed a motion to dismiss the petition, alleging several grounds for dismissal, including that she had already filed a petition to adopt R.D. in a case that was pending in Minnesota. After a hearing, during which the trial court was presented with a finalized Minnesota adoption order as to R.D., the trial court granted Nicole's motion to dismiss. Leroy filed what the trial court characterized as a motion to reconsider and a motion for injunctive relief, both of which the trial court denied following a hearing. Leroy appeals. We affirm the trial court's judgment.

¶ 2                                                    I. BACKGROUND

¶ 3          From October 2016 to December 2018, Leroy was involved in a dating relationship with Adrienne H. Early in the relationship, the couple lived with Leroy's father in Morris, Illinois. Leroy's sister, Megan D., and her children lived in the house next door. In August 2017, Leroy was taken into custody in Illinois on a state felony drug charge. He was later sentenced to seven years in prison with a projected mandatory supervised release date of December 2020.

¶ 4          Shortly after Leroy was taken into custody, Adrienne moved to Chicago. She lived there for about a year. While Adrienne was in Chicago, she kept in contact with Leroy and Megan. In November 2017, three months after Leroy was taken into custody, Adrienne gave birth to R.D., who was allegedly Leroy's child.

¶ 5          In August 2018, Adrienne and R.D. moved in with Adrienne's mother, Crystal C., in Romeoville, Will County, Illinois. In September 2018, Adrienne executed an Illinois short-term guardianship form appointing Crystal as the short-term guardian of R.D. The appointment was to take effect the following month and was to last for one year but could be terminated earlier by Adrienne in writing. Adrienne executed the guardianship form because she had to serve a jail sentence in Wisconsin and was not going to be able to take care of R.D. during that time period.

¶ 6          In October 2018, the Illinois Department of Healthcare and Family Services (DHFS) filed a petition in the Will County trial court to establish Leroy's paternity of R.D. and to have Leroy start paying child support for R.D. (the Will County paternity case). In the petition, Adrienne was listed as the petitioner and Leroy was listed as the respondent. The petition stated, among other things, that Leroy was the "alleged father" of R.D. Leroy's first appearance date in court on the petition was set for February 1, 2019.

¶ 7          In December 2018, Adrienne was released from jail in Wisconsin and returned to live at Crystal's address in Romeoville, Illinois. Although Adrienne started taking care of R.D. again, it does not appear that she ever revoked or terminated Crystal's short-term guardianship of R.D. in writing. Later that same month, Adrienne passed away. Leroy's sister, Megan, was watching R.D. at the time that Adrienne's death was discovered. Crystal asked Megan if she

_____

[1]Although Leroy's filing was labeled a complaint, the Illinois statute indicates that such a filing shall be designated a petition. See 750 ILCS 46/602 (West 2018). We will, therefore, refer to Leroy's filing as a petition in this case.

could have R.D. with her while she mourned Adrienne's death so Megan gave R.D. to Crystal. It was Megan's understanding that R.D. would be returned to her at Adrienne's funeral. At the funeral, however, R.D. was in the care of Adrienne's sister, Nicole, and was not returned to Megan. Megan was told that Nicole was only going to keep R.D. temporarily.

¶ 8     The following month, on January 9, 2019, Nicole filed a petition in the probate division of the Minnesota trial court seeking to be appointed the emergency temporary guardian of R.D. (the Minnesota guardianship case).[2] Nicole alleged in the petition that she lived in Minnesota; that she was R.D.'s maternal aunt (Adrienne's sister); that Crystal was R.D.'s short-term guardian in Illinois and legal representative; and that it was necessary to appoint a temporary emergency guardian for R.D. because R.D. was a minor, R.D.'s mother had recently passed away, there was no adjudicated father of R.D., paternity of R.D. had never been established, Crystal was unable to continue to care for R.D. and had asked Nicole to do so, and because R.D. did not have an appropriate legal caregiver.

¶ 9     Two days later, on January 11, 2019, in the Will County trial court, the Will County paternity case was dismissed without prejudice on the oral motion of the DHFS due to the death of Adrienne. Leroy's first appearance date (February 1, 2019) was stricken at that time.

¶ 10    On January 29, 2019, in the Minnesota trial court, an order was entered appointing Nicole as the general guardian of R.D. In the order, the Minnesota trial court found that R.D.'s mother (Adrienne) was deceased, that R.D. had no adjudication of paternity, that Nicole was R.D.'s maternal aunt, that R.D. had lived with Nicole since Adrienne had passed away, that R.D. was a minor who was in need of a guardian, and that Nicole was the most suitable and best qualified to serve in that position of those who were available and willing to do so.

¶ 11    The day after the Minnesota guardianship order was entered, Leroy registered with the putative father registry in Illinois with regard to R.D.

¶ 12    In February 2019, Leroy's sister, Megan, filed a petition in the Will County trial court to be appointed the guardian of R.D. (the Will County guardianship case). In the petition, Megan listed Leroy as R.D.'s father, Nicole as the person who had custody of R.D., and Crystal's Romeoville address as the address of R.D.'s residence. During about that same time period, Megan also sought to reinstate the Will County paternity case that had been brought and dismissed by DHFS.

¶ 13    At some point thereafter, Nicole, through her attorney, made a special and limited appearance in the Will County guardianship case. Nicole objected that the trial court in that case did not have jurisdiction over the matter because a guardianship had already been established as to R.D. by Nicole in Minnesota. On March 14, 2019, Nicole and her partner filed a petition to adopt R.D. in the juvenile division of the Minnesota trial court.

¶ 14    About two weeks later, in Illinois, the Will County trial court entered an order in the Will County guardianship case wherein it found that it did not have jurisdiction over the matter because guardianship of R.D. had already been established in Minnesota. The Will County trial court, therefore, dismissed the Will County guardianship case with prejudice and directed that a copy of the dismissal order be provided to the trial court judge in the Will County paternity case.

---

[2]All of Nicole's court filings in Minnesota were in Ramsey County where Nicole lived.

¶ 15    In April 2019, the Will County trial court entered an order that was agreed to by the parties, including Leroy, dismissing the Will County paternity case with prejudice. The agreed order indicated, among other things, that Leroy was represented in the proceedings by an attorney and that Nicole was making a special and limited appearance in the case through her attorney so that she could object to the proceedings on the grounds that Illinois did not have jurisdiction and certain other matters. In addition, the dismissal order specifically provided that it would not be construed as having subjected Nicole or R.D. to the jurisdiction of the Will County court or of Illinois and that "Leroy [was] knowingly and voluntarily [withdrawing] any and all petitions and pleadings filed by him or on his behalf, whether individually, through counsel, or through any third party, including but not limited to Megan [D.]"

¶ 16    Later that same month (April 2019), Leroy filed the instant case in the trial court in Fulton County, Illinois, the county where he was serving his prison sentence, to establish his parentage and visitation rights as to R.D. Leroy had the parentage petition served upon Nicole in Minnesota. By the time that Leroy had filed his parentage petition, Nicole's adoption case had been pending in the Minnesota trial court for about 45 days.

¶ 17    In June 2019, the Minnesota trial court denied Leroy's request to proceed as a poor person in the Minnesota adoption case, finding that Leroy's "action" was frivolous.

¶ 18    Also in June 2019, Nicole's attorney filed an appearance in the Fulton County parentage case and a motion to dismiss Leroy's parentage petition. In the motion, Nicole alleged that dismissal was proper on several grounds, including that (1) the trial court lacked personal jurisdiction over Nicole since Nicole was not a citizen or resident of Illinois and had not submitted to the jurisdiction of Illinois; (2) Leroy's parentage case was barred by the prior judgment obtained by Nicole and against Leroy in the Will County paternity case; (3) both at the time that Leroy's parentage case was filed and currently, there was an action pending in the Minnesota trial court for the adoption of R.D.; (4) the trial court did not have subject matter jurisdiction over Leroy's parentage case since R.D. had begun residing with Nicole in Minnesota in January 2019 and since the applicable child custody statute had vested exclusive continuing jurisdiction in the Minnesota trial court with regard to R.D. after the Minnesota trial court had made the initial child custody determination in the Minnesota guardianship case; and (5) Fulton County was an improper venue for the proceeding and it was against the public policy of Illinois to allow Leroy's parentage petition to proceed since R.D. was currently residing in Minnesota, R.D. had never resided in Fulton County, Leroy had been in prison in Illinois during R.D.'s entire lifetime, and Leroy took no action to establish his parent-child relationship with R.D. until after R.D.'s mother had passed away.

¶ 19    The day after the motion to dismiss was filed in the Fulton County parentage case (June 2019), the Minnesota trial court in the Minnesota adoption case held a hearing on Nicole's petition for adoption. Although not quite clear from the record, it appears that the Minnesota trial court took its ruling under advisement.

¶ 20    In July 2019, Leroy filed a response and opposed the motion to dismiss in the Fulton County parentage case. Leroy alleged in his response, among other things, that Illinois was R.D.'s home state and that Illinois was a more appropriate forum for resolution of the custody issues pertaining to R.D. Attached to Leroy's response were various supporting documents, including the affidavit of Leroy's sister, Megan; the affidavit of Leroy; a portion of the affidavit that Nicole and her partner had presumably filed in the Minnesota adoption case in response

to a motion that Leroy had filed in that case; and certain other documents. The relevant information provided in Megan's affidavit has already been set forth previously.

¶ 21 In his affidavit, Leroy attested to some of the information that has already been set forth above. Leroy also attested that he and Adrienne were going to get married and continually kept in contact with each other, even though he was incarcerated; that Adrienne allowed Leroy to give R.D. his last name; that Leroy had no doubt that R.D. was his child; that Leroy contacted Adrienne and R.D. every day from jail and also sent letters and e-mails to Adrienne and R.D.; that Adrienne's family knew Leroy was the father of R.D.; that Leroy also kept in contact with Adrienne's mother, Crystal, and received letters and pictures from Crystal; that through Leroy, R.D. had one sister and an extended family; that in July 2018, the DHFS had Adrienne swear under oath that Leroy was the father of R.D.; that after Adrienne was released from jail in December 2018, she took R.D. back into her care; and that Leroy's sister, Megan, should be given temporary custody of R.D. until Leroy was released from prison.

¶ 22 In the affidavit of Nicole and her partner that Leroy had submitted from the Minnesota adoption case, Nicole and her partner attested, among other things, that Leroy provided no proof of paternity of R.D.; that, before Adrienne's death, Adrienne never identified the father of R.D.; that no father was listed on R.D.'s birth certificate; that no recognition of parentage had ever been recorded as to R.D.; that Adrienne signed over guardianship of R.D. to Crystal in October 2018; that Adrienne never gave guardianship of R.D. to anyone in Leroy's family; that Leroy filed a custody/paternity action in Will County and an order was entered in that case in March 2019 finding that the Will County trial court did not have jurisdiction because a valid guardianship had already been ordered in Minnesota and dismissing the action with prejudice; that Minnesota was R.D.'s home state and that jurisdiction in Minnesota was proper; and that Leroy's pleadings in the Minnesota adoption case should be disregarded as frivolous litigation with no foundation.[3]

¶ 23 On August 7, 2019, the Minnesota trial court entered a finalized adoption order as to R.D.

¶ 24 Five days later, on August 12, 2019, the Fulton County trial court held a hearing on Nicole's motion to dismiss Leroy's parentage petition. Leroy and Nicole were both present in court for the hearing. Leroy was in the custody of the Illinois Department of Corrections (DOC) at the time of the hearing and represented himself in the proceedings. Nicole was represented by her attorney. During the hearing, a certified copy of the finalized Minnesota adoption order was presented to the Fulton County trial court. According to the Fulton County trial judge, the Minnesota trial court specifically found in the adoption order that no putative father had registered with the appropriate state registry within 30 days of R.D.'s birth in either Illinois or Minnesota, that no one had been adjudicated the father of R.D., and that "Leroy [D.], a putative father, was served with notice of [the] adoption proceedings and with the documents required to be served upon a putative father" under Minnesota statute. At the conclusion of the hearing, the Fulton County trial court found that dismissal was warranted on many of the grounds set forth by Nicole, including that the Fulton County trial court did not have personal jurisdiction over Nicole or subject matter jurisdiction over R.D. due to the finalized adoption of R.D. in Minnesota. The trial court, therefore, granted Nicole's motion and dismissed Leroy's parentage action. A detailed written order was subsequently entered.

---

[3]Initially, only a portion of Nicole and her partner's affidavit appears in the record. Later in the record, however, the full affidavit can be found.

¶ 25        Later that same month (August 2019), Leroy filed a motion for rehearing and to vacate (subsequently treated by the trial court, and referred to hereinafter in this order, as a motion to reconsider) the trial court's grant of Nicole's motion to dismiss Leroy's parentage action. Leroy asserted in the motion, among other things, that Nicole's motion to dismiss was based on fraud and deception; that the hearing held on Nicole's motion to dismiss was inadequate and unfair; that Nicole had lied to the Minnesota trial court in the Minnesota guardianship case and had deliberately concealed from the Minnesota trial court that, at the time of the Minnesota guardianship proceeding, there was a paternity case pending in the Will County trial court; that under the applicable child custody statute, the Illinois and Minnesota trial courts should have communicated before the jurisdictional issue was decided and the parties should have been given an opportunity to present facts and legal arguments on the jurisdictional issue; that Nicole had also defrauded the Minnesota trial court when she alleged in her guardianship petition that R.D. did not have any other parent or person acting as a parent to support R.D. or to take care of R.D. in Illinois; that the Fulton County and Will County trial courts failed to appoint a guardian *ad litem* for R.D. as required by law; that Nicole violated the Minnesota and Illinois interstate compacts; that Nicole lacked standing to continue her possession over an Illinois baby; and that the agreed order "made in secret" in the Will County paternity and guardianship cases was invalid. Leroy asked the trial court to vacate the Minnesota guardianship and adoption of R.D., grant Leroy injunctive relief, and require that R.D. be returned to Leroy's family immediately.

¶ 26        Attached to Leroy's motion as supporting documents were many of the same documents that had previously been submitted. Also attached was a copy of a document titled, "Admission of Paternity and Intent to Claim Parental Rights," that Leroy had apparently filed or tried to file in the Minnesota adoption case. The document had been sworn or affirmed to by Leroy in June 2019. In the document, Leroy stated that he had received a Notice to Registered Putative Father and a Notice of Jurisdiction with regard to the Minnesota adoption case, that he was the father of R.D., that he had registered with the Minnesota Fathers' Adoption Registry as R.D.'s father, that he was not consenting to the adoption of R.D., that he intended to retain his legal rights regarding R.D., that he was requesting to be notified of any further proceedings with respect to the custody or adoption of R.D., and that he was entering his appearance in the case on a limited basis so that he could refute the jurisdiction of the Minnesota trial court.

¶ 27        In addition to the motion to reconsider, Leroy also filed a separate motion for injunctive relief. In the motion for injunctive relief, Leroy alleged that his family had standing to enforce the return of R.D., that Nicole had come into possession of R.D. in Illinois in January 2019 and had transported R.D. to Minnesota without legal authority; that Nicole had lied to the Minnesota trial court in the Minnesota guardianship case and had falsely told the Minnesota trial court that no paternity action was pending as to R.D., even though the Will County paternity case was pending at that time; that no guardian *ad litem* was ever appointed in the Minnesota or Illinois cases to speak on R.D.'s behalf prior to R.D.'s removal from Illinois; that both Adrienne and Crystal were now deceased; and that Leroy's sister, Megan, had standing after caring for and helping to protect R.D. for a year in Illinois and should receive R.D. in her care.

¶ 28        In December 2019, the trial court held a hearing on Leroy's pending motions. Leroy was present in court for the hearing in the custody of the DOC and represented himself in the proceedings. It is unclear from the record whether Nicole was present in person in the trial

court for the hearing, but she was represented at the hearing by her attorney. At the conclusion of the hearing, the trial court denied Leroy's motion to reconsider and his motion for injunctive relief. A written order to that effect was later filed.

¶ 29 Leroy appealed. Before this court, Leroy filed a motion to proceed as a poor person and a motion for appointment of counsel. We granted the first request as to the appellate court filing fee only and denied the second request.

## II. ANALYSIS

¶ 31 On appeal, Leroy argues that the trial court erred in granting Nicole's motion to dismiss Leroy's parentage petition and in denying Leroy's motion to reconsider that dismissal and Leroy's motion for injunctive relief. In support of that argument, Leroy makes numerous assertions. First, Leroy contends, Nicole's motion to dismiss should not have been granted because the initial Minnesota guardianship order and the subsequent Minnesota adoption order were both procured through fraud and deception. As a specific example of that fraud and deception, Leroy claims that in the initial Minnesota guardianship proceeding, Nicole and Crystal falsely alleged that R.D. required emergency protection as a ward of Minnesota and deliberately concealed from the Minnesota trial court that a petition to establish Leroy's paternity of R.D. was already pending in Will County, Illinois. According to Leroy, instead of giving R.D. to Nicole to take to Minnesota, Crystal should have notified the Will County trial court that she was no longer able to care for R.D. or to serve as R.D.'s short-term guardian. Leroy suggests that Nicole was acting as agent of Minnesota at the time and that she acted illegally and in violation of Illinois's Interstate Compact on the Placement of Children (Interstate Compact) (45 ILCS 15/1 (West 2018)) because she did not have legal authority to transport R.D. out of Illinois for the purpose of adoption. As another example of that fraud and deception, Leroy claims that in the subsequent Minnesota adoption proceeding, Nicole falsely alleged that Adrienne had not told anyone before she had died that Leroy was the biological father of R.D., even though Nicole and Crystal were both aware of the Will County paternity case in which Adrienne had declared that Leroy was R.D.'s father.

¶ 32 Second, Leroy contends, Nicole's motion to dismiss should not have been granted because the Minnesota trial court lacked personal and subject matter jurisdiction to enter both the initial Minnesota guardianship order and the subsequent Minnesota adoption order. More specifically, Leroy claims that under the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 *et seq.* (West 2018); Minn. Stat. § 518D.101 *et seq.* (2018)), which Leroy cites as the applicable child custody statute in this case, Minnesota was not R.D.'s home state and any emergency jurisdiction that Minnesota allegedly had to enter orders necessary for R.D.'s protection was only temporary and of limited duration. Thus, Leroy contends that the Minnesota guardianship and adoption orders were both void *ab initio* due to lack of jurisdiction. At the very least, Leroy maintains, the Minnesota and Illinois trial courts should have communicated before the initial guardianship petition in Minnesota was decided.

¶ 33 Third, and as his final assertion on this issue, Leroy contends that Nicole's motion to dismiss should not have been granted or, at the very least, that the trial court's ruling in that regard should be overturned because Leroy was denied a fair proceeding at the dismissal hearing in Fulton County and because Nicole, DHFS, the Will County and Fulton County courts, the lawyers involved, and certain others acted improperly to obstruct and deny Leroy's and R.D.'s right to have a parent-child relationship with each other. In support of that assertion,

Leroy points to, among other things, the fact that the Fulton County trial court treated Leroy's motion to vacate the trial court's grant of Nicole's motion to dismiss as a motion to reconsider under section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203 (West 2018)) rather than a motion to vacate under section 2-1401 of the Code (*id.* § 2-1401) as Leroy had intended. For that reason and for all of the other reasons stated, Leroy asks that we reverse the Fulton County trial court's judgment, that we vacate the Minnesota trial court's orders, and that we remand this case to the Fulton County trial court for further proceedings.

¶ 34 Nicole argues that the trial court's grant of the motion to dismiss and denial of Leroy's motion to reconsider and motion for injunctive relief were proper and should be upheld. As for Leroy's claim that the initial Minnesota guardianship order and the subsequent Minnesota adoption order were fraudulently procured, Nicole asserts that (1) none of the allegations in the Minnesota guardianship proceeding were incorrect or improper, (2) Leroy was not entitled to notice of the Minnesota guardianship proceeding under Minnesota law because he had failed to establish paternity as to R.D., (3) the transportation of R.D. from Illinois to Minnesota in January 2019 was not improper as that action was taken with the full knowledge and permission of R.D.'s short-term guardian, Crystal, and (4) Leroy was notified of the Minnesota adoption proceeding and attempted to participate in that proceeding. Thus, Nicole contends that there was no fraud in the procurement of the Minnesota guardianship and adoption orders and that the trial court properly rejected Leroy's fraud claim. As for Leroy's claim that the Minnesota guardianship and adoption orders were void due to lack of subject matter jurisdiction, Nicole asserts that (1) Minnesota had a duty to protect those persons located within its boundaries, including R.D.; (2) Nicole had legal and actual physical custody of R.D. in Minnesota since January 29, 2019; (3) Minnesota had exclusive continuing jurisdiction under the Parental Kidnapping Prevention Act of 1980 (PKPA) (28 U.S.C. § 1738A (2018)), the child custody statute that Nicole claims applies in this case, to enter the adoption order as to R.D. since Minnesota had made the initial custody determination as to R.D. when Minnesota entered the initial guardianship order; and (4) the Will County paternity and guardianship cases had been dismissed with prejudice. Nicole contends, therefore, that Leroy's lack of jurisdiction argument was completely without basis and was properly rejected by the Fulton County trial court. Finally, as for Leroy's claim that certain persons and/or entities acted improperly to obstruct and deny Leroy and R.D.'s right to a relationship, Nicole does not specifically address that claim, as it appears from Nicole's brief on appeal that she was not aware that Leroy had filed an appellate brief in this case and that she made her arguments in her brief based upon the issues that Leroy had raised in his docketing statement. For all of the reasons set forth, Nicole asks that we affirm the Fulton County trial court's judgment.

¶ 35 Although Nicole's motion to dismiss refers to a few different statutes, it was generally in the nature of a section 2-619 motion to dismiss. Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2018); *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The statute's purpose is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter*, 207 Ill. 2d at 367; *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several different

grounds for which an involuntary dismissal may be granted, including such things as: a lack of subject matter jurisdiction, another case pending between the same parties for the same cause, and the claim being barred by a prior judgment or other affirmative matter. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2018). In ruling upon a section 2-619 motion to dismiss, the trial court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Van Meter*, 207 Ill. 2d at 367-68. On appeal, a dismissal pursuant to section 2-619 is generally reviewed *de novo*. *Id.* at 368. When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43.

¶ 36    To resolve this particular issue in this appeal, we must consider first the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) since the trial court in the dismissal hearing was presented with, and based its ruling in part upon, the Minnesota adoption order pertaining to R.D. Under the full faith and credit clause, each state is required to give full faith and credit to the public acts, records, and judicial proceedings of every other state. U.S. Const., art. IV, § 1; *V.L. v. E.L.*, 577 U.S. 404, 406 (2016) (*per curiam*); *Marina Associates v. Barton*, 206 Ill. App. 3d 122, 124 (1990); Restatement (Second) of Conflict of Laws § 93 (1971). The intended purpose of the full faith and credit clause is

> "to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276-77 (1935).

The intended function of the full faith and credit clause is to avoid the relitigation of adjudicated issues in other states. *Finley v. Kesling*, 105 Ill. App. 3d 1, 6 (1982). With regard to judgments, the obligation of the full faith and credit clause is exacting: a final judgment in one state, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition in every other state throughout the country. *V.L.*, 577 U.S. at 407. One state may not disregard the judgment of another state merely because it disagrees with the reasoning underlying the judgment or deems the judgment to be wrong on the merits. *Id.* Indeed, the full faith and credit clause prevents any inquiry into the merits of the cause of action, the logic or consistency of the decision, or the validity of the legal principles on which the judgment was based. *Id.*

¶ 37    Consistent with the full faith and credit clause, a party may collaterally attack a foreign state's judgment in only two instances: (1) when there is extrinsic fraud in the procurement of the judgment or (2) when there is a lack of personal or subject matter jurisdiction in the foreign court. *Massie v. Minor*, 307 Ill. App. 3d 115, 119 (1999). With regard to fraud in the procurement, Illinois courts have distinguished between two types of fraud: extrinsic and intrinsic. *Id.* Extrinsic fraud is fraud that prevents the forum court from acquiring jurisdiction or merely gives the forum court colorable jurisdiction. *Id.* The classic example of extrinsic fraud in the procurement is the situation where the unsuccessful party has been prevented from exhibiting his case fully, as by keeping him or her away from the courthouse, or where the defendant never had knowledge of the suit. *Id.* Intrinsic fraud, on the other hand, is fraud that occurs after the forum court acquires jurisdiction, such as false testimony or concealment. *Id.* Only extrinsic fraud renders a foreign court's judgment void and unenforceable. *Id.* Intrinsic fraud does not do so. See *id.*

¶ 38        As for jurisdiction, a state is not required to give full faith and credit to a judgment rendered by a foreign state court that did not have jurisdiction over the subject matter or the parties. *V.L.*, 577 U.S. at 407. As a result, before a court is bound by a judgment rendered in another state, it may inquire into the jurisdictional basis of the foreign court's judgment. *Id.* That jurisdictional inquiry, however, is a limited one: if the judgment on its face appears to be an order of a court of general or competent jurisdiction, jurisdiction over the subject matter and the parties shall be presumed unless disproved by extrinsic evidence or by the record itself. See *id.*

¶ 39        In ruling upon the issue before us, we must also be mindful of the provisions of the PKPA, the child custody statute that applies in this case.[4] The PKPA is a uniform federal statute that governs child custody jurisdiction disputes and was enacted by Congress in 1980 to remedy the problems associated with the Uniform Child Custody Jurisdiction Act (UCCJA).[5] *In re Baby Girl F.*, 402 Ill. App. 3d 127, 136 (2008). In addition to kidnapping and child abduction, the PKPA also applies to interstate custody disputes and adoptions. *Id.* at 136-37. Although Congress had many goals it sought to accomplish with the PKPA, the act's main purpose was to extend the full faith and credit clause to child custody orders. See *Thompson v. Thompson*, 484 U.S. 174, 183 (1988); *Baby Girl F.*, 402 Ill. App. 3d at 137.

¶ 40        If a state's custody order, such as an adoption order, is consistent with the provisions of the PKPA, the other states must enforce that order. See *Thompson*, 484 U.S. at 175-76; *Baby Girl F.*, 402 Ill. App. 3d at 137-38. For a state court's custody order to be consistent with the provisions of the PKPA, the state must have jurisdiction under its own local law and one of the several conditions listed in 28 U.S.C. § 1738A(c)(2) must be satisfied. *Thompson*, 484 U.S. at 176-77. In short, "[those] conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused." *Id.* at 177. "Once a state exercises jurisdiction consistently with the PKPA, no other state may concurrently exercise jurisdiction over the custody dispute, even if it would have been empowered to take jurisdiction in the first instance, and all states must accord full faith and credit to the first state's ensuing custody decree." *Baby Girl F.*, 402 Ill. App. 3d at 138.

¶ 41        After reviewing the record in the present case along with the provisions of the PKPA and the case law pertaining to the full faith and credit clause, we find that the Fulton County trial court properly granted Nicole's motion to dismiss Leroy's parentage action and properly denied Leroy's motion to reconsider that dismissal. In ruling upon the motion, the trial court had before it a final order from Minnesota, granting Nicole and her partner's petition to adopt R.D. Unless Leroy showed that the Minnesota adoption order had been procured through extrinsic fraud or that the Minnesota court lacked jurisdiction, the trial court was required to

---

[4]Although Leroy also refers to the UCCJEA and the Interstate Compact, neither of those enactments would apply here. The UCCJEA does not apply to adoptions (see *In re Baby Girl F.*, 402 Ill. App. 3d 127, 136 (2008)) and the Interstate Compact does not apply in situations where a child is brought into a receiving state by certain relatives and left with certain relatives in the receiving state (see 45 ILCS 15/1, art. VIII(a) (West 2018)).

[5]The UCCJA was a child custody statute that preceded both the PKPA and the UCCJEA. See *Baby Girl F.*, 402 Ill. App. 3d at 136.

give full faith and credit to the Minnesota adoption order. See U.S. Const., art. IV, § 1; *V.L.*, 577 U.S. at 406; *Marina Associates*, 206 Ill. App. 3d at 124.

¶ 42     Contrary to Leroy's fraud claim, however, the record in this case showed that Leroy failed to present any facts that would have given rise to a claim of extrinsic fraud in the procurement of the initial Minnesota guardianship order. See *Massie*, 307 Ill. App. 3d at 119. Leroy does not assert that he was kept away from the Minnesota courthouse, and although Leroy may not have known about the Minnesota guardianship proceeding, he was not entitled to notice under Minnesota law because he had failed to establish his paternity as to R.D. See Minn. Stat. §§ 524.5-204(b), 524.5-205(b) (2018). Our conclusion in that regard would be no different under Illinois law. See *In re Sophia G.L.*, 229 Ill. 2d 143, 167-68 (2008) (indicating that the alleged father of the child at issue was not entitled to notice of Indiana child custody proceedings under a similar child custody statute, even though the alleged father was presumed to be the father of the child by the interested parties, because the alleged father had not yet established his paternity as to the child). In addition, and again contrary to Leroy's assertion on appeal, there is no indication in this case that the Minnesota trial court was presented with any false or incorrect facts in the initial guardianship proceeding. Rather, Nicole's petition correctly alleged that R.D. had been in Nicole's care in Minnesota since January 7, 2019, that R.D.'s mother was deceased, that no paternity had been established as to R.D., that Crystal had been named R.D.'s short-term guardian in Illinois, and that Crystal had asked Nicole to take R.D. into Nicole's care because Crystal was no longer able to care for R.D. While it is true that Nicole should have told the Minnesota trial court about the pending Will County paternity case—if Nicole knew about that case—there is no dispute here that the paternity case had been dismissed before the Minnesota trial court ruled upon the guardianship petition.[6] Furthermore, Leroy's allegations of fraud in the Minnesota cases were only allegations of intrinsic fraud in that Leroy claimed that certain matters had been concealed from the Minnesota court in the guardianship proceeding and that a false statement had been made in the adoption proceeding. Such allegations, however, even when taken in the light most favorable to Leroy, would not be sufficient to render the Minnesota guardianship or adoption orders invalid and unenforceable. See *Massie*, 307 Ill. App. 3d at 119. The trial court, therefore, properly rejected Leroy's claim of fraud in the procurement of the Minnesota guardianship and adoption orders.

¶ 43     As for Leroy's claim of a lack of subject matter jurisdiction, we do not agree. The Fulton County trial court in the instant case was presented with a finalized adoption order from Minnesota granting Nicole and her partner's petition to adopt R.D. Under the full faith and credit clause, the trial court could conduct a limited inquiry to determine if it appeared that the Minnesota court had subject matter jurisdiction to issue the adoption order. See *V.L.*, 577 U.S. at 407. The adoption order had been issued by the county juvenile court in Minnesota where Nicole and R.D. lived. Under Minnesota law, such a court would normally have subject matter jurisdiction over adoption cases. See *Zweber v. Credit River Township*, 882 N.W.2d 605, 608 (Minn. 2016) (recognizing that the district courts (the trial courts) in Minnesota were courts of general jurisdiction that had constitutional authority to hear and decide all civil and criminal

---

[6]Under Illinois statute, Crystal should have sought leave from the Will County trial court if R.D. was going to be removed from Illinois for 30 days or more. See 755 ILCS 5/11-13(f), 11-13.2(b) (West 2018). Despite that fact, however, the Minnesota trial court was clearly informed during the guardianship proceeding about Crystal's status as R.D.'s short-term guardian.

cases); Minn. Stat. § 259.23 (2018) (indicating that adoption cases in Minnesota were to be heard by the county juvenile courts). Thus, on its face and after limited inquiry, the adoption order in the present case appeared to have been entered by a court with valid subject matter jurisdiction. See *V.L.*, 577 U.S. at 406-07. The Fulton County trial court, therefore, was not allowed to inquire further into the merits of the Minnesota adoption order and was required to give full faith and credit to that order, regardless of any irregularities. See U.S. Const., art. IV, § 1; *V.L.*, 577 U.S. at 406-07; *Marina Associates*, 206 Ill. App. 3d at 124. Accordingly, we reject Leroy's claim that the Minnesota adoption order was void due to lack of subject matter jurisdiction.

¶ 44    In reaching that conclusion, we note that contrary to Leroy's assertion on appeal, there is nothing in the applicable child custody statute that would negate Minnesota's subject matter jurisdiction to issue the adoption order.[7] Under the PKPA, the child custody statute that would apply here, Minnesota had subject matter jurisdiction to enter the initial guardianship order, even if Illinois was R.D.'s home state, because R.D. was physically present in Minnesota and because R.D. had essentially been abandoned by Crystal and had been turned over to Nicole. See 28 U.S.C. § 1738A(c).[8] In addition, under both Minnesota and Illinois law, any putative father of R.D., including Leroy, would also have been deemed to have abandoned R.D. because that putative father had failed to register with the state registry within 30 days of R.D.'s birth. See Minn. Stat. § 259.52(8)(3) (2018); 750 ILCS 50/12.1(h) (West 2018). Once the Minnesota trial court entered the valid guardianship order as to R.D., which, without dispute, was the initial custody order that was entered, it retained exclusive continuing jurisdiction to enter any further orders regarding the custody of R.D., including the later-obtained adoption order. See 28 U.S.C. § 1738A; *Baby Girl F.*, 402 Ill. App. 3d at 138.

¶ 45    Finally, while Leroy claims that he was denied fair proceedings in both Minnesota and Fulton County, it is clear from the record before us that such was not the case. The record amply demonstrates that Leroy was not entitled to notice of the Minnesota guardianship proceeding and that Leroy was given notice of, and tried to participate in, the Minnesota adoption proceeding. In addition, despite Leroy's assertion to the contrary, the Fulton County trial court could not treat Leroy's posthearing motion as a section 2-1401 petition for relief from judgment because Leroy had filed the motion within 30 days after the trial court had made its ruling on Nicole's motion to dismiss. See 735 ILCS 5/2-1401(a) (West 2018); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 101-02 (2002) (recognizing that section 2-1401 of the Code authorizes a party to seek relief from a final judgment when brought more than 30 days after judgment has been entered). Many of the other claims that Leroy has made are not established in the record and must be disregarded since no report of proceedings, agreed

---

[7]In our view, a question still remains as to whether the requirements of the PKPA are jurisdictional. See, *e.g.*, *V.L.*, 577 U.S. at 406-10 (considering whether the mandatory requirements of the Georgia adoption statute were jurisdictional); *McCormick v. Robertson*, 2015 IL 118230, ¶¶ 18-28 (determining that the requirements of a similar child custody statute were not jurisdictional in nature). We need not decide that question here, however, because neither party has made an assertion to the contrary. We, therefore, assume, for the purposes of this appeal, that the PKPA requirements are jurisdictional.

[8]Although we have not applied the UCCJEA here, we note that we would have reached the same conclusion had we done so. Section 204 of the UCCJEA grants the trial court temporary emergency jurisdiction to enter a child custody order as to a child who is present in the state and who has been abandoned. See 750 ILCS 36/204 (West 2018); Minn. Stat. § 518D.204 (2018).

statement of facts, or bystander's report was filed in this case.[9] See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (recognizing that the appellant has the burden to present a sufficiently complete record of the proceedings in the trial court to support a claim of error and that any doubts that arise from the incompleteness of the record will be resolved against the appellant). We must conclude, therefore, that the Fulton County trial court properly granted Nicole's motion to dismiss Leroy's parentage petition and properly denied Leroy's motion to reconsider that dismissal. It follows, then, that Leroy's motion for injunctive relief was also properly denied since it was filed within the context of, and was dependent upon, Leroy's parentage action.

¶ 46                                    III. CONCLUSION

¶ 47        For the foregoing reasons, we affirm the judgment of the circuit court of Fulton County.

¶ 48        Affirmed.

---

[9]Although Leroy filed a proposed bystander's report in the trial court and served the proposed report upon Nicole, it does not appear that the trial court ever certified the proposed report for use in this appeal (see Ill. S. Ct. R. 323(c) (eff. July 1, 2017)) or that Leroy ever obtained a ruling upon the matter from the trial court.